IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA
Plaintiff,                                    *
                                              *
        v.                                    *           Civil No. JFM-11-1001
                                              *
CYNTHIA ALLEN-WILLIAMS, D.M.D.                *
Third-Party Plaintiff,                        *
                                              *
        v.                                    *
                                              *
AMERICAN EDUCATION SERVICES                   *
Third-Party Defendant                         *
                                              *
                                          ******

MEMORANDUM

        The United States brought suit on behalf of the Department of Health and Human

Services ("HHS") against defendant Cynthia Allen-Williams, D.M.D. ("Williams") seeking

judgment in the amount of $78,637.95 plus prejudgment interest for federal Health Education

Assistance Loans ("HEAL loans") allegedly in default.  Williams subsequently filed a third-party

claim against American Education Services, a fictitious name used by the Pennsylvania Higher

Education Assistance Agency ("PHEAA"), alleging that her HEAL loans are in default as a

result of PHEAA's fraud and breach of contract.  PHEAA now moves to dismiss Williams'

claim, and Williams moves to dismiss the United States' claim.  The issues have been fully

briefed, and no oral argument is necessary.  *See* Local Rule 105.6.  For the reasons stated below,

Williams' motion to dismiss will be denied, and PHEAA's motion will be denied in part and

granted in part.

BACKGROUND

As a dental student at Temple University, defendant Cynthia Allen-Williams ("Williams") applied for and received two Health Education Assistance Loans ("HEAL loans"), signing a promissory note for $20,000 on July 28, 1992 and another for $20,000 July 15, 1993. (Compl. ¶ 3, ECF No. 1.)  These loans and Williams' Federal Family Education Loan Program loans ("FFELP loans") were all originally serviced by third-party defendant American Education Services, otherwise known as the Pennsylvania Higher Education Assistance Agency ("PHEAA").  (Third-Party Compl. ¶ 2, ECF No. 6.)

Williams sought and received deferments or forbearances on her HEAL loans intermittently from 1995 to January 31, 2004.  (*Id.*, Ex. D.)  Meanwhile, on or around May 22, 2002, PHEAA contacted Williams to notify her that her student loans were in default.  (*Id.* ¶ 3.) Williams and PHEAA then entered into an agreement whereby Williams accepted an accelerated payment schedule to rehabilitate her loans.  (*Id.*)  Between May 2002 and June 2003, Williams made fourteen $2000 payments, (*Id.*, Ex. H), and was then supposed to resume a regular payment schedule.  (*Id*. ¶ 3.)  From June 2003 to June 2004, however, Williams made a total of three payments on her HEAL loans and one payment on each of her FFELP loans.  (*Id.*, Ex. C). Williams claims that PHEAA did not apply the $28,000 in accelerated payments to her debt but instead misappropriated those funds.  (*Id.* ¶ 48.)

On or around May 27, 2004, Williams contacted PHEAA seeking another temporary forbearance or deferment.  (*Id.* ¶ 4.)  Williams avers that she was granted this forbearance, (*Id.*), and that, since the inception of this lawsuit, a representative of third-party defendant PHEAA confirmed the deferment, at least as to the FFELP loans.  (*Id.* ¶ 8.)  PHEAA does not concede that such a deferment was granted, (*See* Mot. to Dismiss Third-Party Compl. at 3 n.3, ECF No.

9-1), and it is not listed on Williams' deferment and forbearance history.  (*See* Third-Party Compl., Ex. D.)

Whether or not the forbearance was actually granted, the United States alleges that, on September 28, 2004, PHEAA sent Williams a final demand letter to remit payment in full to avoid a default claim on her HEAL loans.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2, ECF No. 17).  The United States also avers that Williams was notified on or around January 19, 2005 that her HEAL loans had been assigned to the Department of Health and Human Services ("HHS") because they were in default.  (Compl., Ex. A.)  On or around April 1, 2005, Williams was then allegedly notified that her account had been referred to a collection agency.  (*Id.*, Ex. B.)  Just over a month later, on or around May 12, 2005, the United States notified Williams that her account was "seriously delinquent."  (*Id.*, Ex. C.)  The government avers that it then sent Williams a final notice on or around November 9, 2005.  (*Id.*, Ex. D.)

Williams took no action in response to these notices, (Compl. ¶¶ 5–10), all of which were sent to 1500 Underwood St. N.W. in Washington, D.C.  (Compl., Ex. A–D.)  Williams contends that she did not become aware of the default status of her HEAL loans in 2005 and denies that the HHS letters were ever conveyed to her.[1]  (Third-Party Pl.'s Opp'n to Def.'s Mot. to Dismiss at 3, ECF No. 15.)  On November 30, 2005, less than one month after the final HHS notice was allegedly sent, Williams applied for a loan consolidation, listing HHS as the servicer of two of her HEAL loans.  (Third-Party Compl., Ex. B.)  Among her other loans, Williams also listed two

---

[1] In her Answer to Plaintiff's Complaint, Williams stated in paragraphs 7–11 that she was without sufficient knowledge or information to admit or deny that the HHS letters dated January 26, April 1, May 12, and November 9, 2005 were mailed.  Given that Williams is *pro se* and clarified in her Opposition that she denies that the letters were ever mailed, and given the standard governing a motion to dismiss, the court will read her Answer and Opposition as a denial of receipt.  *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985) (directing district courts to construe *pro se* litigants' complaints liberally).

loans serviced by Loan Servicing Center in the amounts of $3937 and $6516.  (*Id*.)  She now

claims that PHEAA fraudulently added these two loans to her existing debt.  (*Id.* ¶ 51.)  On the

consolidation application, Williams listed her address as 1413 Skip Jack Drive in Fort

Washington, Maryland.  (*Id.*, Ex. B.)  In February 2006 Williams was notified that the

consolidation application had been approved.  (*Id.* ¶ 5.)  PHEAA does not deny that a

consolidation was granted but indicates that the HEAL loans and FFELP loans would not have

been consolidated together.  (Mot. to Dismiss Third-Party Compl. at 7 n.5.)

     On or around September 24, 2009, HHS again began sending notices of default, this time

listing Williams' address as 1413 Skip Jack Drive in Fort Washington, Maryland.  (Compl., Ex.

E.)  On October 16, 2009, HHS sent another notice to the same address, advising Williams that

her account was "seriously delinquent."  (*Id.*, Ex. F.)  In April 2010, Williams received a phone

call from HHS notifying her that her HEAL loans were in default.  (*Id.* ¶ 6.)  Later that month,

Williams met with lawyers for HHS, who explained to her that HHS had purchased her HEAL

loans in January 2005 when PHEAA alleged that she had defaulted.  (*Id.* ¶ 7.)  Williams avers

that this was the first time she was made aware of the alleged 2005 default.  (Third-Party Pl.'s

Opp'n to Def.'s Mot. to Dismiss at 4 n.4.)  HHS advised Williams to enter a consent judgment

and repayment plan, but she declined to do so before further investigation.  (Third-Party Compl.

¶ 7.)  Williams then communicated with PHEAA by phone and in writing over the next several

months, seeking an explanation as to the status and history of her account.  (*Id.* ¶¶ 8–28.)

     On March 25, 2011, HHS sent Williams a letter of intent to file suit against her.  (*Id.* ¶

29.)  On April 6, 2011, Williams again rejected HHS's offer to enter into a consent judgment and

repayment plan.  (*Id.* ¶ 33.)  HHS filed suit against Williams on April 15, 2011, seeking

$78,637.95 plus prejudgment interest at a rate of 3.125%, accruing daily.  (Compl. ¶ 14.)

Williams filed her third-party complaint against PHEAA June 21, 2011, alleging breach of contract and fraud. (Third-Party Compl. ¶¶ 41, 45, 51, 54, 60.) Williams seeks $708,000 in compensatory damages, plus interest, and punitive damages in an amount to be determined. (Third-Party Compl. at 12.) She avers that her damages arose in 2005 with the sale of her HEAL loans but that she was not made aware of the sale until meeting with HHS attorneys in 2010. (Third-Party Pl.'s Opp'n to Def.'s Mot. to Dismiss at 4 n.4.)

PHEAA now moves to dismiss Williams' claims as time-barred or, in the alternative, because the Higher Education Act does not provide a private cause of action against lenders. (Mot. to Dismiss Third-Party Compl. at 4, 10 n.6, ECF No. 9.) Williams moves to dismiss the government's claim against her as time-barred. (Third-Party Pl.'s Mot. to Dismiss Pl.'s Compl. at 2, ECF No. 14.)

## STANDARD OF REVIEW

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). The court may, however, consider the moving party's statute of limitations defense when the defense is apparent from the complaint. *Douglass v. NTI-TSS, Inc.*, 632 F. Supp. 2d 486, 491 (D. Md. 2009). The Fourth Circuit has made clear that a motion to dismiss should be granted only in the rare circumstance where facts sufficient to rule on an affirmative defense clearly appear on the face of the complaint. *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Importantly, though, a movant cannot merely show that the elements of the defense appear on the face of the complaint but must also "show that the plaintiff's potential

rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Id.* at 466.

When ruling on such a motion, the court may consider the complaint and any document attached thereto. *Sec'y of State for Defence v. Trimble Navig. Ltd.,* 484 F.3d 700, 704 (4th Cir. 2007). The court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

ANALYSIS

I.      *Williams' Motion to Dismiss the United States' Complaint as Time-Barred*

Williams has moved to have the United States' claim dismissed as time-barred. While Williams is correct that the general statute of limitations in Maryland is three years, Md. Code Ann., Cts. & Jud. Proc. § 5-101, this statute of limitations does not apply to suits brought by the United States to collect on defaulted HEAL loans. 42 U.S.C. § 292f(i) (making inapplicable any state statutes of limitation on the United States' actions for loan collection). Thus, Williams' motion to dismiss the United States' claim fails as a matter of law and will be denied.

II.     *PHEAA's Motion to Dismiss Williams' Third-Party Complaint as Time-Barred*

The third-party defendant, PHEAA, moves to dismiss the third-party plaintiff's complaint on the grounds that it is barred by the statute of limitations. Under Maryland law, the statute of limitations for contract and fraud claims is three years unless otherwise specified. Md. Code Ann., Cts. and Jud. Proc. § 5-101. Generally, the statutory time begins to run on the date of the alleged wrong. *Kumar v. Dhanda*, 17 A.3d 744, 748 (Md. App. 2011). For all civil actions, including breach of contract and fraud, however, Maryland also recognizes the "discovery rule,"

which holds that the cause of action accrues when the claimant in fact knew or should have known of the wrong.  *Virtual Phys. Ctr. Rockville, LLC v. Phillips Med. Sys. N. Am., Inc.*, 478 F. Supp. 2d 840, 846 (D. Md. 2007).  Accordingly, under the discovery rule, the plaintiff must have notice of the wrong to start the running of the statutory period.  *See id.*  Notice has been defined as express cognition or awareness implied from knowledge of circumstances.  *See id.*

A.  *Alleged Fraudulent Addition of Principal to Williams' Consolidated Loans*

Williams alleges breach of contract in counts I and II and fraud in counts III and IV. Counts III and IV include allegations that PHEAA added principal to Williams' consolidated student loans.  Given that Williams listed the two Loan Servicing Center loans, one for $3937 and another for $6516, on her consolidation application in November 2005, it is indisputable that she was aware of those loans at that time.  Therefore, any claim Williams has arising out of the allegedly fraudulent addition of this principal is time-barred.  This portion of Williams' claim will be dismissed.

B.  *Alleged Failure to Apply Accelerated Payments to Williams' Debt*

Among Williams' claims are allegations that PHEAA misappropriated the accelerated payments she made in 2002–2003 to rehabilitate her loans.  Construing the pleadings in the light most favorable to the non-moving party and accepting as true her allegations of misappropriation, there is no basis for believing that she was aware of the alleged misappropriation more than three years prior to the filing of this lawsuit.  It is therefore inappropriate, or at least premature, to dismiss this claim as time-barred.  Further discovery may reveal that Williams' claim is time-barred or that there is no basis for her allegations, but dismissal is not warranted as to that claim at this early stage.  For the misappropriation claim to survive any future motion for summary judgment, however, Williams will have to set forth

evidence that PHEAA's explanation of the use of the rehabilitation payments, *see* Exhibit W, indicates misappropriation.  At this stage, PHEAA's motion to dismiss this portion of the complaint will be denied.

    C.  *Alleged Breach of Contract and Fraud Resulting from the Transfer of Williams' HEAL Loans to HHS*

Williams' third-party complaint also alleges breach of contract and fraud arising out of PHEAA's transfer of her HEAL loans in 2005.  Williams does not allege breach of contract or fraud in the mere transfer of her loans to another servicer but rather challenges the basis for the transfer as a breach of an alleged forbearance agreement.  If Williams knew in 2005 that HHS held her loans because of alleged default, or if she was aware that transfer to HHS is a consequence of default, she would have been on inquiry notice of the alleged status of her loans, and her claims against PHEAA would now be time-barred.  The timing of Williams' first awareness of the reason for the transfer turns on whether she received the HHS letters allegedly sent in 2005.

Generally, an individual is presumed to have received mail properly addressed and delivered to the post office.  *Bosiger v. U.S. Airways*, 510 F.3d 442, 452 (4th Cir. 2007).  An alleged recipient cannot defeat this presumption merely by making a general denial of receipt. *See id.* at 453.  In this case, the government's exhibits indicate that HHS letters were mailed to Williams from January 2005 through November 2005 at a Washington, D.C. address.  Williams denies the letters were ever sent and listed a Fort Washington, Maryland address on her consolidation application at the end of November 2005.  The disparity between the address she listed on that application and the address to which HHS sent its letters allows the court to draw a reasonable inference that the letters warning of default status may not have been properly

addressed. I am therefore unable to apply the general presumption that properly addressed mail is received by the intended party.

While it is clear that Williams knew as early as her consolidation application in November 2005 that HHS held her HEAL loans, there remains some doubt whether Williams was on notice that HHS was the holder of her loans *because* she was allegedly in default. Accordingly, Williams' general denial that the letters were ever sent and the disparity between the addresses used indicate that she may not in fact have had sufficient knowledge of the basis for her breach of contract and fraud claims until sometime after 2005. Upon further inquiry, it may become clear at summary judgment that the HHS letters were properly addressed or that Williams otherwise had sufficient information to put a reasonably prudent person on notice, such that her claims are time-barred. Construing the facts and the reasonable inferences derived therefrom in the light most favorable to the third-party plaintiff, however, there is insufficient information to make that finding at this time. PHEAA's motion to dismiss Williams' claims regarding the alleged breach of contract and fraud in transferring the HEAL loans will therefore be denied.

III.   *PHEAA's Motion to Dismiss Williams' Complaint Because the HEA Does Not Provide a Private Cause of Action*

PHEAA notes in a footnote that even if Williams' claims are not time-barred, they should be dismissed because the Higher Education Act ("HEA") does not provide a private cause of action against lenders. While it is indeed true that the HEA does not provide a private cause of action, *see, e.g., McCullough v. PNC Bank,* 298 F.3d 1217, 1221 (11th Cir. 2002); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995), Williams has brought contract and fraud claims, not claims under the HEA. The HEA does not provide plaintiffs a separate cause of

action, but it is not meant to "insulate wayward lenders and guaranty agencies from liability stemming from fraudulent activities or unfair business practices." *Jackson v. Culinary Sch. of Washington*, 788 F. Supp. 1233, 1245 (D.D.C. 1992) (allowing students to proceed with state law claims against lenders), *appealed on other grounds*, 27 F.3d 573 (D.C. Cir. 1994). Williams' contract and fraud claims are therefore not subject to dismissal as a result of the HEA's failure to provide a separate private cause of action.

October 18, 2011
Date

/s/
J. Frederick Motz
United States District Judge