IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| CYNTHIA ALLEN-WILLIAMS, D.M.D.<br>Third-Party Plaintiff | * | Civil No. 8:11-cv-1001-JFM |
| | * | |
| v. | * | |
| | * | |
| AMERICAN EDUCATION SERVICES<br>Third-Party Defendant | * | |
| | * | |

******

MEMORANDUM

The United States brought suit on behalf of the Department of Health and Human Services ("HHS") against defendant Cynthia Allen-Williams, D.M.D. ("Williams"), seeking repayment, including prejudgment interest, of federal Health Education Assistance Loans ("HEAL loans") allegedly in default. Williams subsequently filed a third-party claim against American Education Services, a fictitious name used by the Pennsylvania Higher Education Assistance Agency ("PHEAA"), alleging that her HEAL loans are in default as a result of PHEAA's fraud and breach of contract. Now pending before the court are PHEAA's and the United States's motions for summary judgment. The issues have been fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons stated below, both motions for summary judgment will be granted.

I.[1]

As a dental student at Temple University, defendant Cynthia Allen-Williams ("Williams") applied for and received two Health Education Assistance Loans ("HEAL loans"), signing a promissory note for $20,000 on July 28, 1992 and another for $20,000 on July 15, 1993.  (Compl. ¶ 3.)  These loans and Williams' Federal Family Education Loan Program loans ("FFELP loans") were all originally serviced by third-party defendant American Education Services, otherwise known as the Pennsylvania Higher Education Assistance Agency ("PHEAA").  (Third-Party Compl. ¶ 2, ECF No. 6.)

Williams sought and received deferments or forbearances on her HEAL loans intermittently from 1995 to January 31, 2004.  (*Id.*, Ex. D.)  Meanwhile, on or around May 22, 2002, PHEAA contacted Williams to notify her that her student loans were in default.  (*Id*. ¶ 3.)  Though Williams contends she was unaware that her loans were in default status at the time, Williams and PHEAA entered into an agreement whereby Williams accepted an accelerated payment schedule to rehabilitate her loans.  (*Id.*)  Between May 2002 and June 2003, Williams made fourteen $2000 payments, (*Id.*, Ex. H), which were first applied to outstanding charges, then interest, and then principal.  (PHEAA Mot. Summ. J. at 11, ECF No. 51-1.)  Williams received a letter stating that she had successfully completed the rehabilitation program as to her FFELP loans.  (*Id.*)  Her HEAL loans were not among the rehabilitated loans listed in the letter.  (*Id*.)  Williams claims that PHEAA did not apply the $28,000 in accelerated payments to her debt but instead misappropriated those funds.  (Third-Party Compl. ¶ 48.)  Following rehabilitation of the FFELP loans, Williams was expected to resume a regular payment schedule.  (*Id.* ¶ 3.)  From

---

[1] These facts were recounted in large part in my opinion at the Motion to Dismiss stage.  In support of their summary judgment motions, PHEAA and the United States have offered additional evidence, as has Williams in opposition to these motions.  To the extent that the court relies on these additional facts, they are included here as well.

June 2003 to June 2004, however, Williams only made a total of three payments on her HEAL loans and one payment on each of her FFELP loans.  (*Id.*, Ex. C).

Williams requested and received an economic hardship forbearance on her FFELP loans from September 20, 2003 through September 19, 2004, and again from October 20, 2004 through October 19, 2005.  (PHEAA Mot. Summ. J. at 11.)  On or around May 27, 2004, Williams contacted PHEAA seeking another temporary forbearance or deferment, which she thought would apply to all of her loans, including her HEAL loans.  (Third-Party Compl. ¶ 4.)  Williams avers that she was granted this forbearance, (*Id.*), and that, since the inception of this lawsuit, a PHEAA representative confirmed the deferment, at least as to the FFELP loans.  (*Id.* ¶ 8.)  PHEAA does not concede that such a deferment was granted as to the HEAL loans, (*See* Mot. Dismiss Third-Party Compl. at 3 n.3, ECF No. 9-1), and it is not listed on Williams' deferment and forbearance history.  (*See* Third-Party Compl., Ex. D.)

PHEAA contends that, throughout 2004, it sent letters and made phone calls to Williams, attempting to advise her that her HEAL loans were delinquent.  (PHEAA Mot. Summ. J. at 14.)  Having failed to successfully make contact with Williams, on September 28, 2004, PHEAA sent Williams a final demand letter to remit payment in full to avoid a default claim on her HEAL loans.  (Pl.'s Opp'n Def.'s Mot. Dismiss at 2, ECF No. 17; PHEAA Mot. Summ. J. at 15.)  Subsequently, Williams' HEAL loans were submitted to HHS on November 29, 2004, and the claim was paid January 19, 2005.  (PHEAA Mot. Summ. J. at 15.)  HHS then sent two letters to Williams in January 2005, notifying her that a guaranty claim had been paid on her defaulted HEAL loans.  (*Id.*)  These letters both stated, "The previous holder of your note(s) placed you in default and/or submitted a claim to the government for the total due."  (*Id.*)  On or around April 1, 2005, Williams was notified that her account had been referred to a collection agency.

3

(Compl., Ex. B.)  Just over a month later, on or around May 12, 2005, the United States notified Williams that her account was "seriously delinquent."  (*Id.*, Ex. C.)  All of these notices were sent to 1500 Underwood St. N.W. in Washington, D.C., (Compl., Ex. A–D), where Williams admits she lived until August 1, 2005.  (Williams Dep. at 29:15–18, ECF No. 51, Ex. 2; Williams Opp'n at 6, ECF No. 54.)  The government avers that it sent Williams a final notice on or around November 9, 2005.  (*Id.*, Ex. D.)

Williams took no action in response to these notices until the final notice was sent in November.  (Williams Dep. at 107–08.)  Upon receipt of the November 9th letter, which indicated that the date of default on her HEAL loans was January 19, 2005, Williams contacted HHS to inquire about the meaning of the letter.  (*Id.*; Williams Opp'n at 6; PHEAA Reply at 3, ECF No. 56.)  Despite admitting that she received the November letter and contacted HHS in November 2005, Williams contends that she did not become aware of the default status of her HEAL loans in 2005 and denies that any of the other HHS letters were ever conveyed to her.  (Third-Party Pl.'s Opp'n Def.'s Mot. Dismiss at 3, ECF No. 15.)

On November 30, 2005, less than one month after the final HHS notice was sent, Williams applied for a loan consolidation, listing HHS as the servicer of two of her HEAL loans.  (Third-Party Compl., Ex. B.)  On the consolidation application, Williams listed her address as 1413 Skip Jack Drive in Fort Washington, Maryland.  (*Id.*, Ex. B.)  In February 2006 Williams was notified that the consolidation application had been approved.  (*Id.* ¶ 5.)  PHEAA does not deny that a consolidation was granted but indicates that the HEAL loans and FFELP loans would not have been consolidated together and that the defaulted loans were not eligible for consolidation.  (Mot. Dismiss Third-Party Compl. at 7 n.5; PHEAA Mot. Summ. J. at 11.)  On February 10, 2006, Williams received a letter identifying all of the loans included in the

4

consolidation; the HEAL loans were not listed. (PHEAA Mot. Summ. J. at 12.) In April 2006, Williams applied for a mortgage and found that her credit report listed HHS as holding $32,000 in loans. (Williams Opp'n at 7; Williams Dep. at 114–15.) At that time, she believed HHS was listed by mistake because she believed she had been granted a forbearance in 2004 and thought all of her loans had been consolidated in 2005. (Williams Dep. at 106–07, 116:16–19.)

On or around September 24, 2009, HHS again began sending notices of default, this time to 1413 Skip Jack Drive in Fort Washington, Maryland, the address Williams used on her consolidation application. (Compl., Ex. E.) On October 16, 2009, HHS sent another notice to the same address, advising Williams that her account was "seriously delinquent." (*Id.*, Ex. F.) In April 2010, Williams received a phone call from HHS notifying her that her HEAL loans were in default. (*Id.* ¶ 6.) Later that month, Williams met with lawyers for HHS, who explained to her that HHS had purchased her HEAL loans in January 2005 when PHEAA alleged that she had defaulted. (*Id.* ¶ 7.) Williams avers that this was the first time she was made aware of the 2005 default. (Third-Party Pl.'s Opp'n Def.'s Mot. Dismiss at 4 n.4.) HHS advised Williams to enter a consent judgment and repayment plan, but she declined to do so before further investigation. (Third-Party Compl. ¶ 7.) Williams then communicated with PHEAA by phone and in writing over the next several months, seeking an explanation as to the status and history of her account. (*Id.* ¶¶ 8–28.)

On March 25, 2011, HHS sent Williams a letter of intent to file suit against her. (*Id.* ¶ 29.) On April 6, 2011, Williams again rejected HHS's offer to enter into a consent judgment and repayment plan. (*Id.* ¶ 33.) HHS filed suit against Williams on April 15, 2011, (Compl. ¶ 14), and seeks $81,005.82 plus prejudgment interest at a rate of 3.125%, accruing annually, as well as $350 in filing fees, and $45 for the process service fee. (U.S. Mot. Summ. J. at 1–2, ECF No.

49.) Williams filed her third-party complaint against PHEAA June 21, 2011, alleging breach of contract and fraud. (Third-Party Compl. ¶¶ 41, 45, 51, 54, 60.) Williams contends that PHEAA's sale of her loans was fraudulent because she had been granted a forbearance and was therefore not in default and that the sale of her loans constituted a breach of the forebearance agreement. (*Id.*) Williams seeks $708,000 in compensatory damages, plus interest, and punitive damages in an amount to be determined. (Third-Party Compl. at 12.) She avers that her damages arose in 2005 with the sale of her HEAL loans but that she was not made aware of the sale until meeting with HHS attorneys in 2010. (Third-Party Pl.'s Opp'n to Def.'s Mot. to Dismiss at 4 n.4.) At the motion to dismiss stage, one of Williams' fraud claims was dismissed as time-barred, but questions of fact remained regarding whether the PHEAA and HHS mailings were properly addressed and whether PHEAA had misappropriated any of Williams' rehabilitation payments. Following additional discovery to clarify these issues, PHEAA and the United States have now moved for summary judgment.

II.

Rule 56 of the Federal Rules of Civil Procedure provides that a party may seek summary judgment on each claim or defense or part thereof. Summary judgment should be rendered when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Whether

a fact is material depends on the substantive law. *See id*.

The party seeking summary judgment bears the initial burden of demonstrating the

absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). Once the moving party has met that burden, the non-moving party must demonstrate that

such an issue does, in fact, exist. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*

475 U.S. 574, 586–87 (1986). "A party opposing a properly supported motion for summary

judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must

'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore*

*Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e));

*see also Rivanna Trawlers Unltd. v. Thompson Trawlers*, *Inc.,* 840 F.2d 236, 240 (4th Cir.1988).

The court must view all facts and draw all reasonable inferences in the light most favorable to

the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 377 (2007).

III.

A. PHEAA's Motion

Williams alleges breach of contract and fraud against PHEAA. The statute of limitations

for fraud and contract claims in Maryland is three years unless otherwise specified by law. Md.

Code Ann., Cts. & Jud. Proc. § 5-101. Generally, the statutory time begins to run on the date of

the alleged wrong. *Kumar v. Dhanda*, 17 A.3d 744, 748 (Md. Ct. Spec. App. 2011). For all civil

actions, including breach of contract and fraud, however, Maryland also recognizes the

"discovery rule," which holds that the cause of action accrues when the claimant in fact knew or

should have known of the wrong. *Virtual Phys. Ctr. Rockville, LLC v. Phillips Med. Sys. N. Am.,*

*Inc.*, 478 F. Supp. 2d 840, 846 (D. Md. 2007). Accordingly, under the discovery rule, the

plaintiff must have notice of the wrong to start the running of the statutory period. *See id*. Notice has been defined as express cognition or awareness implied from knowledge of circumstances. *See id*.

Williams' third-party complaint alleges breach of contract and fraud arising out of PHEAA's transfer of her HEAL loans in 2005. Williams challenges the basis for the transfer as fraudulent and a breach of an alleged forbearance agreement. If Williams knew in 2005 that HHS held her loans because of alleged default, or if she was aware that transfer to HHS is a consequence of default, she would have been on notice of the default status of her loans, and her claims against PHEAA would now be time-barred. The timing of Williams' first awareness of the reason for the transfer thus turns on whether she received the HHS letters allegedly sent in 2005.

Generally, an individual is presumed to have received mail properly addressed and delivered to the post office. *Bosiger v. U.S. Airways*, 510 F.3d 442, 452 (4th Cir. 2007). An alleged recipient cannot defeat this presumption merely by making a general denial of receipt. *See id.* at 453. In this case, the government's exhibits indicate that HHS letters were mailed to Williams from January 2005 through November 2005 at a Washington, D.C. address. Williams continues to deny the letters were ever sent and listed a Fort Washington, Maryland address on her consolidation application at the end of November 2005. Following further discovery, however, Williams admits that she lived at the Washington, D.C. address until August 2005, when she moved to Fort Washington. She is therefore presumed to have received the letters sent to the Washington, D.C. address from January 2005 through July 2005. Moreover, Williams now admits to having received a letter from HHS dated November 9, 2005, which clearly listed January 19, 2005 as the date of default for her HEAL loans. Furthermore, Williams' promissory

8

notes, which she admits she signed and understood, clearly state that, upon default, her loans would be transferred to the federal government for collections. (PHEAA Mot. Summ. J. at 16; PHEAA Reply at 2 n.1.) In addition, Williams knew HHS held her loans when she received a credit report in 2006 listing HHS as a creditor. Thus, as early as 2005 but certainly by 2006, Williams was aware or should have been aware that her loans had been transferred to HHS as a result of alleged default.

Given that HHS held Williams' loans and that Williams had no confirmation that she had been granted a forbearance on her HEAL loans, it was not reasonable, as Williams asserts, to conclude that the debts on the credit report were erroneous. In any case, the reasonableness of Williams' conclusion is immaterial. It is dispositive that Williams had either actual or constructive notice of PHEAA's alleged fraud and breach of contract by 2006 at the latest. She did not assert her claim until 2011, five years after she became aware of the alleged wrong. Her claims against PHEAA are therefore time-barred. Moreover, even if her claims were timely, there is no evidence in the record to suggest that PHEAA misappropriated Williams' rehabilitation payments in applying them first to collections costs, then to interest, as outlined in 34 C.F.R. § 682.404(f), nor is there any evidence of a forbearance agreement that PHEAA could have breached by transferring the loans to HHS. Accordingly, PHEAA's motion for summary judgment is granted.

B.  The United States's Motion

The United States has filed suit to secure repayment of Williams' HEAL loans. Williams contends that the United States should have to recover against PHEAA because they fraudulently sold her debt in violation of an alleged forbearance agreement. To survive summary judgment

on a claim for repayment of defaulted HEAL loans, Williams must prove that her affirmative defenses are legally sufficient, *United States v. Ogawa*, No. C-93-20375 RMW, 1994 U.S. Dist. LEXIS 6719, *2–*3 (N.D. Cal. Mar. 23, 1994), by offering more than "mere allegations or denials." *Bouchat*, 346 F.3d at 525.

It is undisputed that Williams signed the promissory notes and received the HEAL loans. It is also clear that HHS held Williams' loans as of January 2005 and that she has not repaid the debt. Williams asserts that these loans were in forbearance and should therefore never have been transferred to the federal government, but the record reflects no evidence that Williams received a forbearance on her HEAL loans in 2004 or 2005. Having failed to pay on loans for which she did not receive a forbearance, Williams' loans entered default status and, per the terms of the promissory notes she admits she signed, were transferred to the federal government for collections. Accordingly, Williams must repay HHS. The United States's motion for summary judgment is therefore granted.

June 11, 2012  /s/
Date  J. Frederick Motz
United States District Judge